Case 20-4082, Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corporation, et al. Argument not to exceed 15 minutes per side. Mr. Markovits, you may proceed for the rebuttal. And you've saved 4 minutes for rebuttal, is that correct? Yes, Your Honor, thank you. Okay, you may proceed. Thank you. Good morning, Your Honors. May it please the Court, Bill Markovits on behalf of the Ohio Public Employees Retirement System. When we were before this Court 8 years ago, it was because the District Court had accepted defendants' arguments, and in so doing had committed legal error. It said that materialization of the risk was not a valid theory, and this Court overturned that. We're here again for the same reason. This time the District Court accepted at least 6 legally erroneous arguments in denying class certification. If all that happened was a denial of arguments that related solely to class certification, we wouldn't be here today. But the arguments that she accepted, and the decision she made on class certification, in part were merits determinations with respect to price impact, and therefore precluded OPRs from going forward individually. That resulted in a grant of summary judgment. We are here today from that grant of summary judgment, which was a final order under 28 U.S.C. 1291. So you're not arguing that you can't go forward because without the class certification this case isn't worth trying on an individual basis, right? No, we are not arguing that. Just out of curiosity, how much did OPRs have invested, and how much did they lose? I don't think it's material to the case, but it's just interesting. It depends if you're talking FIFO or LIFO, it's between 18 and 27 million. Okay, that's what's at stake here. Yes. So if the case could go forward in terms of what it's worth, did you assert other alternative ways of proving your case when you filed this case, but now you've simply determined that you don't think the other ones have legs, or have you always had only one theory of this case? We've always had only one theory of this case, which is price maintenance theory of price impact. Price maintenance is essentially a corollary of the materialization of risk theory for loss causation that we were talking about eight years ago. Let me ask a question along those lines that I've struggled with. So it seems to me Microsoft, and now I'm getting to the jurisdictional point. Microsoft seems to deal, what they say in Microsoft essentially, the Supreme Court, is in 23F orders, it's a unique subset. We've got 23F. That was set up as a result of the problems we were having with district courts, in either scenario, harming litigation. In other words, district courts not allowing classes to properly go forward or improperly certifying classes. We created this. And in rule 23F advisory committee notes, one of the reasons we should grant 23F is because the decision sends a death knell to the litigation. We all agree. That is correct, Your Honor. And what you're essentially saying now is this sends a death knell to the litigation. And it seems to me when I read your briefs, meaning also your other briefs on the jurisdictional issue, that one of your briefs is the defendants weren't going to move for summary judgment. They were going to wait 18 months. So you moved for sua sponte, summary judgment.  But it seems to me, I guess this is twofold. One is, isn't Microsoft's point that you can't get around rule 23F and you have to play litigation out to its natural end before you can appeal? Otherwise, the plaintiff has, if is denied, something the defendants don't have, which is the ability to seek sua sponte summary judgment just like they could seek voluntary dismissal. No defendant is going to seek sua sponte summary judgment after a class is certified. So why isn't that gamesmanship a one-way ratchet? And I'm not saying you were engaged in gamesmanship because I have questions for them to the opposite side. But why isn't that? It's not a one-way ratchet for a number of reasons. And this case is distinct from Microsoft for a number of reasons. I believe the majority of the motions panel got it correct in that respect. The differences are this. Unlike Microsoft, which is a voluntary dismissal, this was a summary judgment. Unlike Microsoft... Yeah, but they're both tools that only were available to the plaintiff, which is what Microsoft also hung its hat on. I would disagree, Your Honor. Those tools, summary judgment, was available to the plaintiff, was available to the defendant. No, no, no. Can a defendant really, if a class is certified... So just flip this case and the district court certifies the class. You're telling me, and Microsoft has a pragmatic aspect to it, I think we all agree, that you can really, a defendant would really move for sua sponte summary judgment to get the 23-F review they were denied? No. What I'm saying here is in this case, in this situation, the plaintiff, the defendant, or the court on its own initiative could have, the defendant could have moved for summary judgment. That's always true. My point is, you're looking at the particulars of this case, and I'm trying to take it out broader to the Microsoft context to understand what the Supreme Court's getting at at Microsoft. Right. And here, your client could move for sua sponte summary judgment, whereas had they certified your class, there's no way the defendant, because you can't assume defendant wins on cert and would move for summary judgment. Of course, that could happen. But the difference, Your Honor, is this. Again, this was not a voluntary dismissal as a summary judgment. It had to have the intervention of the court. This wasn't a stop-and-start situation. The plaintiff couldn't stop and start the litigation any time class certification is denied. There had to be a determination on the merits, as there was here. With regard to the motions panel. But it's just a tool to obtain the same thing that the plaintiff obtained in Microsoft. Let me ask a separate question. That's my point. But the separate question is, the 18 months that you make issue with, I mean, you could have contested. I agree with you. It sounds completely unreasonable, the defendant's statement. And I'm going to ask him about it. But 18 months, I mean, I was a district judge. You could come to me, Judge McKeego, as a district judge. It's not like the plaintiff doesn't have a say in discovery. And 18 months is absurd. Yes, it is absurd. And we were concerned about that. We had already indicated that we didn't intend to take further discovery. There had already been over 20 depositions, hundreds of thousands of pages. But you didn't have a meeting with the district court, sorry. No, go ahead. You didn't have a meeting with the district court and say, look, let's set discovery because if discovery is long, we need to move for sui sponte, summary judgment, because let us tell you, Judge Pearson, here's the problem and we've taken all this discovery, so let's set three months out a summary judgment deadline. And if they need additional discovery, they should detail it in front of you. That happens all the time. And I don't know that the 18 months, there's an issue that the motions panel took with it. I think the primary distinction is this. The primary distinction of Microsoft v. Baker is found in innovation ventures, which happened subsequently and reaffirmed the raceway exception. There's a very good analysis in innovation ventures of two separate lines of cases. There's the cases where there are conditional dismissals, as they called it, which is Microsoft, where we're dismissing with prejudice, but we can revive the class claims if the matter is reversed. There's the Humbert case, where we're stipulating to 45,000 in damages, but if the liability is reversed, we can revisit that. There's the Page Plus case, where we're dismissing our counterclaims, but if the liability is reversed, we get to revive our counterclaims. Those have all been found improper. Innovation ventures contrasted cases that fall squarely in our situation, which is the raceway case, antitrust case, where the court essentially... But none of those were class actions where there was an intervening, and innovation ventures specifically says that class actions basically are different, right? Well, yes and no. They mention it's not a class action, but what they say in the opinion is, Microsoft's primary concern was with conditional dismissals, and then they talk about that in terms of Humbert. They talk about that in terms of Page Plus, and then they distinguish raceway and other cases in Bogorad. They say in innovation ventures that the court was centrally concerned with the possibility that plaintiff's tactic would severely undermine the careful calibration of Rule 23F, and here, just to play it out, what you've effectively done is you saw at 23F it was denied. You came back, and what is it, two days after the stay was lifted, you moved for sua sponte, summary judgment. So you're going right back up, right? You're effectively going around the careful calibration of Rule 23F. I understand the argument and the perception, the argument of defendants that we're trying an end run around 23F. We're not. What happened with 23F, as you know, the court has broad discretion in determining 23F. We made a number of arguments. If you've read the briefs, we raised all the legally erroneous holdings of the court and made a number of arguments. Included in that large quantity of arguments was the idea that the price impact was case dispositive. That wasn't addressed by the motions panel, or by the 23F panel in its decision. So we don't know if they considered that and rejected it or what they did. They have broad discretion. They can deny an appeal for many, many bases. What the fact of the matter is, though, and I can explain why, if there's any concern of this, because the primary argument by the defense and the argument by Judge Griffin in dissent on the motions panel, was that the ruling was not case dispositive and that OPRS could proceed on its case individually. The fact of the matter is, it absolutely could not. Well, following up on that, and I'm going to ask your fellow counsel the same thing, if we found there was no jurisdiction here, and I understand if we don't have jurisdiction, we don't have jurisdiction, but if we were to make that finding, what happens next in this case from your perspective? From my perspective, what should happen is you're essentially then saying a summary judgment that disposed of all claims in all parties was not a proper final judgment under 1291, in which case I think that would be wrong. But if you find that you don't have jurisdiction, I think that decision, if you're saying her decision was wrong, then that decision should be vacated and we'll wait for them to ask for summary judgment down the road. Well, in other words, you've got to go back to the district court. If we say no jurisdiction, there's got to be a do-over in some respect. Right. So you're saying the way in which the case would continue is we would have to be saying that she improperly entered sui sponde summary judgment. So that gets vacated. Yes. And then you're just back to starting over, basically. We're back to starting over. Now, you're presuming then at some point the defendant will move for summary judgment. Let's assume the result is the same. Then you're just back here, right? Yes. And the fact of the matter is, as this court knows, if defendant moves for summary judgment after a remand for lack of jurisdiction, the indication of defendants was we want to wait and move for summary judgment on materiality and scienter, not, as the court put it in her opinion, on an issue that was cherry-picked by OPRS. But if they raise the issue for summary judgment price impact based on a lack of price impact, the court could just grant it on that basis and say, I'm not going to address materiality and scienter, and then we'd be here on the exact same argument. Yes, but we're already here on the exact same argument, right? So, I mean, I think that takes us back to the 23F point. Should we read Microsoft as saying 23F is your exclusive avenue? It's a weird thing. We normally don't have interlocutory appeals. We have this interlocutory appeal that's open to the plaintiff and the defendant. And so it's your exclusive path. And if it was denied, then you just have to litigate your case to conclusion on the merits. Well, let's suppose we never moved for 23F, which is discretionary. Sure. And we just asked for, let's call it sua sponte, a request for sua sponte summary judgment, a request that the court uses its initiative. Then we'd still be here. Jurisdiction would be proper. The court would grant summary judgment. And we'd be here, and there'd be no question that there was any unrun around 23F. But you had mentioned a moment ago, let me just follow up on this, that you're anticipating that if we found we didn't have jurisdiction, we vacate the summary judgment order, it goes back. You're anticipating that Freddie Fannie would then make a summary judgment motion on a number of different grounds, right? Yes. So I am concerned that by the avenue that you've chosen, you've essentially precluded the defendant from seeking summary judgment or winning a trial on these other issues. And in my own mind, I'm not sure whether that's a problem or not, but I'm thinking that Freddie and Fannie might be facing similar claims here from other parties or they have other investments that are sort of the same thing. So your end run, if we describe it that way, then precludes them from raising those issues in the context of summary judgment before Pearson. So if I'm right about that assumption, is that a problem or isn't it a problem? I don't think that's an issue because they could always raise those upon remand. The situation is here is the question is, should you waste judicial resources by continuing a case that's effectively over, not effectively over, is over. But is it wasting judicial resources if we don't have jurisdiction to allow them to seek summary judgment on all of these other grounds that you have prohibited them from doing by virtue of the way in which this unfolded? If this Court takes the approach that we believe is appropriate, which is to reverse the summary judgment determination and hold price maintenance as a valid theory, reverse the class certification decision for the various legal errors that were committed and put it back down to the district court, then we would still move forward. There would have to be a reconsideration of class certification. We would still move forward and the defendants could still... From the defendant's perspective, the posture that puts them in is difficult because now they can take discovery on this limited claim. They can then file for summary judgment on multiple grounds and have that exposed because let's imagine your scenario. We reverse on price impact. It goes back. She certifies the class. Now defendants are facing a completely different ballgame than if they can do it on the individual claim, move for summary judgment on multiple grounds, and win on materiality or something like that as well as this. Let's say they agree with you secretly that price impact is a problem for them, but they want to get to these other ones. They want to do that and get that discovery done and do that before the class certification decision is made. Or damages. Your damages expert hasn't... You don't have an expert right now that's ready at the summary judgment stage. I understand your claim is, look, we were at class sort. We don't have to prove loss causation now, but at some point you do. Right? The point is there. We won't be able to, if it's reversed for a lack of jurisdiction, our only theory is price maintenance, and we won't be able to prove damages, period. We'll lose. It will just take longer and waste judicial resources. We've already lost. The purpose of the Raceway Exception that was reconfirmed in Innovation Ventures is to expedite review where a case is over. This case is over based on her determination. I mean, that just takes us back to the 23F question, right? Does Microsoft stand for the proposition that when it's a class action, you have this particular mechanism. This is the mechanism. It's bilateral. It avoids all the sort of practical problems Justice Ginsburg was worried about, and that's your path. I think Microsoft was a unique situation, though, because there you had a voluntary dismissal of prejudice where you could revive, according to the plaintiff's procedure, you could revive your class certification if it was reversed, and you could stop and start the litigation at your will, at the plaintiff's will solely, repeatedly. That clearly undermines 23F. It makes 23F superfluous. This procedure that we employed falls squarely in the Raceway Innovation Ventures, and it doesn't make 23F superfluous. The 23F... Just going back, and I'm sorry to beat this horse, but what about the one-way ratchet nature of it? Because a defendant who loses on class or loses on 23F will never, and Microsoft has a pragmatic component, is never going to file for summary judgment against themselves or sua sponte, summary judgment. And so now it's only for a plaintiff who loses the class cert decision because there's completely different interests. It's only for... Well, it's for a plaintiff or a defendant. When a plaintiff loses on class, if there's a determination on the merits... Plainly when a defendant loses on class, and being realistic, when they're going to file for summary judgment, sua sponte. No, they're not. But in this case, what I'm saying, it's not a one-way ratchet like Microsoft where only the plaintiff could voluntarily dismiss with prejudice and seek to revive it. Here, first of all, there has to be the intervention of the district court, which there was. I mean, the district court could have said, you know what, I'm going to reconsider price maintenance and price impact based on your motion, and I'm going to say it is a valid theory. Why are we assuming that no defendant would ever move for summary judgment after the class had been certified? Whereas in a case like this, if in fact it turns out that the court has eliminated the theory upon which you could recover, that would be one reason they'd do it. Or it's hard to figure out, reading the district court order, whether she struck the entirety of your expert, including the damage section, or whether she only struck the study section of it and left as damages. But if she struck the whole thing, then they could move for summary judgment on, you can't prove damages. You're correct, that if class certification were granted on legally erroneous bases, then the defendant could bring that to the attention of the district court or ask to expedite the review of that if that was essentially a death knell. I'm not even talking about reconsidering this class action question. I'm talking about moving for summary judgment on the merits. The assumption in some of these questions has been that no defendant would ever do that. But in this case, it seems to me there would be grounds for it. Oh, yeah, absolutely, Your Honor. No, I'm saying against themselves, or to respond to a summary judgment against them. But to get to your point, Judge McKeague, on the expert, our expert was excluded in his entirety, which we say was both error under the Babb case. It's hard to figure that out. It is. She then went on to address your expert's damage portion of the report in connection with class certification, which she wouldn't have done if she struck the whole thing. She did strike the whole thing. That's her order. But the interesting part of that is that the only basis for the Daubert motion, if you read the Daubert motion with respect to Dr. Feinstein, was he erred in respect to his analysis of camera factor five. That's it. But she struck his entire testimony and report, and there was both a factual error there, an abuse of discretion, and there was a legal error there. Because it appears that she struck his entire report based on her acceptance of the idea that camera factor five was dispositive as to market efficiency. When, in fact, Dr. Feinstein repeatedly testified that based on camera factors one through four, the Krogman factors, the trading on the New York Stock Exchange, the lack of any evidence of an inefficient market, his opinion was that it was far more likely than not, not even close. He said that camera five was icing on the cake, that this was an efficient market. Our first expert called it a no-brainer. But if, as the district court said, you view camera factor five as dispositive and you fault his analysis of camera factor five, that appears to be the basis, and it's a legally erroneous basis, but it appears to be the basis for her striking his entire testimony. All right, my time is well over. Any further questions? Thank you, counsel. Thank you. You'll have your full rebuttal. Thank you. Good morning, Your Honors. Jason Frank from Morgan Lewis on behalf of Freddie Mac. With me is my partner, Jordan Hirschman, and from Freddie Mac, Associate General Counsel, Barry Parsons in the first row. Thank you for your time this morning. To reverse the judgment below, OPRS must prevail on five issues. It can't lose a single one. And this court has focused on really the showstopper right from the start, jurisdiction. There's no jurisdiction in this case. So if there is no jurisdiction, then what happens next? If there's no jurisdiction, I expect that the plaintiff is going to be moving for relief from the judgment it asked to be entered against itself in the district court, and we'll see what Judge Gerson has to say about that. Well, the reason that we would presumably say there was no jurisdiction, if that's what the court does, is because her order that was prompted by their motion was not final. Right, Your Honor, it would find either. And that's what you're arguing, that it wasn't final, no jurisdiction. Right, Your Honor. So if it wasn't final, then what happens? What does she do next? And who prompts whatever that action is, the plaintiff, the defendant, both? Well, I think that the district court regards her order as final, even though this court might rule that it has no jurisdiction because it's not a final order. And I would expect that the plaintiff would then move below for relief from the order that it asked to be entered against itself. And then it's set aside. So if granted, it's set aside and you're back to where you were before. If she denies that, you're not saying there's a catch-22 here where she says it's final no matter what we say. We say we don't have jurisdiction because it's not final, and therefore there's a stalemate here. You're not saying that, are you? Well, I don't think there's a stalemate. I think they asked for judgment to be entered against themselves. I think she entered judgment against them. And I think that under Microsoft v. Baker, this court now has no jurisdiction. So I don't see how this court vacates under Microsoft v. Baker. I think this court holds it has no jurisdiction. I expect they'd move for relief, and I can't predict how she would entertain. What if she denies relief? Then does it come back here? If it denies relief, perhaps it does come back here. And then we have jurisdiction? A review or denial of the relief? I suppose there's still no jurisdiction because the fact of the matter is that what's been contrived by plaintiff is a contrived judgment for the purposes of taking an appeal, and it shouldn't be that plaintiffs get an appeal no matter what. But that can't be true that there's no way that eventually this I mean, if we have no jurisdiction because something didn't happen correctly, then if that gets corrected, you're seemingly suggesting that we still wouldn't have jurisdiction. No, I think that if it gets corrected, in other words, if they move for relief down below and she grants them the relief, we're back to where we were before. Down below, we argued that she should not be granting sua sponte summary judgment. But two questions. Why wouldn't we vacate if we say that her order for summary judgment was not really a summary judgment order because it really wasn't final? Why wouldn't we just vacate that? I think there's no appellate jurisdiction. If we don't have jurisdiction, we can't vacate. Okay, and then... So really, we're sending it back for her to say, I really meant it, and then it's final, and then we have jurisdiction? It's not for her to say, I really meant it. I mean, obviously she meant to do what she did. It's just that in this circumstance where a plaintiff engages in a tactic to evade Rule 23F, one of the consequences of their action is that they end the case in the district court for practical purposes, but they haven't done it in a way that gives rise to appellate jurisdiction. So what you're really saying, I think, maybe, is that Justice Thomas was onto something in Microsoft. So the problem maybe isn't a 1291 problem, but it's an Article III problem because they moved for judgment against themselves. They've consented to the judgment, and therefore there's no adversariness, and therefore it's just done? I think they would be surprised to find that, but... I think both exist, Your Honor. I think the fact of the matter is that the majority opinion in Baker was well-reasoned. There's simply no room for, to answer your earlier question, there's no room for another right of appeal in a class certification context when class cert is denied, the only interlocutory appeal is under 23F. There is no raceway exception to 23F. Microsoft v. Baker makes it crystal clear that that line of cases doesn't apply in the line. And it makes it clear because it cites Procter & Gamble? That's right. And says Procter & Gamble wasn't about a class action and did not involve the kind of tactics here. And I think they would say, well, ours is genuine. We're not engaged in some kind of tactic. Well, there can be no doubt this was an inventive litigation ploy. I've only been practicing for coming up on 30 years, and I've never heard of a request for sua sponte summary judgment against the party filing it. We all know sua sponte means without request. They filed a request for a sua sponte summary judgment. Certainly inventive. And was it designed to circumvent 23F? It sure was. The fact of the matter is they filed a 23F petition. It was denied. When that came down below, plaintiffs took no action. We frankly thought they simply weren't going to prosecute their case anymore. When we eventually reached out to them to put a schedule back together, they rejected that and said, no, we have another approach. The case was reopened. Within two days, they filed this request for sua sponte summary judgment. And then when that isn't immediately granted, there's no order in the case, even though we had proposed to begin negotiating one. There's no order. And they continued not to prosecute their case. And frankly, we believed that the court might dismiss for lack of prosecution. So the bottom line is there's no jurisdiction. They got themselves in this position by this creative, if we can use that word, device, which you say was improper. So there's no way for the case to go forward to get a review of the decisions she's made. That's essentially what you're arguing. I think so, Your Honor. I mean, I think that they could move. They'll move for relief from the district court. But if she doesn't grant it, I'm not sure how it's reviewable because the entire context was a tactic to evade 23F. And it's not clear to me that the plaintiffs will even pursue their case anymore. But what if we think, just hypothetically, what if we think that price maintenance thing she said, that's wrong. And you don't really say that she was right about that. You don't really fight the price maintenance theory. So if we think that's wrong and you're saying, well, they made a procedural misstep. They asked for summary judgment against themselves. That destroys adversariness. They lost their case because they made a procedural misstep, even though the district court made a huge, I'm just hypothesizing that she made a huge legal error. If we thought that. I don't think you would find she made a huge legal error. It just seems kind of gamey. And I get that litigation is kind of gamey, especially class action litigation. But, gee. But if I could address price impact for one moment. If you look at her class certification decision, she doesn't make a clear legal error. Rather, she, this is reviewed under the abuse of discretion standard, and she was weighing the evidence. And the plaintiffs have done an interesting thing here. They've essentially said, we don't have to prove anything at this stage on price impact in response to anything that the defendants do. We have a price maintenance theory on the one hand, which essentially says the price doesn't have to move. We have a materialization of the risk theory on the other hand, which essentially says we don't have to point to a corrective disclosure. We can just kind of let everyone infer that the truth came out. So we don't have to prove anything. And what happened at class certification is defendants propounded an expert who opined that there was no evidence of price impact. He looked, he did tests on the initial misrepresentations and found there's no price impact there. And then he analyzed the economic evidence on the back end and found that there was no price impact there. And in response to that, plaintiffs didn't proffer actual evidence. They just espoused their theory. And so if you read her class certification decision, her class certification decision says plaintiff's price maintenance theory is not proof of evidence. You're saying not the price maintenance theory, but this price maintenance theory. Yeah, I think she refers to it as plaintiff's price maintenance theory. So in other words, the theory being like, as it played out in this particular case, rather than I'm rejecting the idea that price maintenance could be a viable legal theory. That's what you think she said. That's right. On class certification, if you review her class certification ruling, rather than the ruling that plaintiffs kind of convinced her to enter to end the case, the class certification ruling really is focused on the evidence. She spent a day listening to Mr. Markovitz and myself, but more importantly, to two experts who testified and were subject to cross-examination. And she ended up believing one and not the other. And that decision is subject to an abuse of discretion standard. That's not all she did. If I read her order right, and you understand this a lot better than I do, she really said that you have to have Comer V evidence in order to prevail on your theory. And you would concede that there certainly are other courts that have said that that's not a requirement. It probably helps. It makes a stronger case. But the absence is not a death knell. I'm glad you raised that issue, Judge McKee. The fact of the matter is that that isn't relevant to the price impact issue. Those issues are relevant to market efficiency. And on market efficiency, just as with price impact, she listened to these two experts and she heard the plaintiff's expert testify that his opinion was based on a multiplicity of factors and that he had done a lot of work on Comer V. And what she ultimately concluded is that he wasn't reliable, that she couldn't believe him. Now, he himself testified that Comer V was an important factor. He testified at deposition that Comer V was, that he wouldn't render an opinion on market efficiency without empirical evidence under Comer V. This was his testimony. Now, plaintiffs say that this is a false narrative and they point to testimony where he was recanting his statements. She didn't believe him. She heard Dr. Feinstein on the stand. She ultimately didn't believe him. She credited Dr. Bajaj, the defendant's expert. So that decision, too, on market efficiency is entitled, is subject to the abuse of discretion standard. She didn't abuse her discretion. There's no evidence whatsoever she did. It's weird to treat that as a question of fact or credibility rather than a question of law. Like we have a five-factor camera test made up by some district court in New Jersey and then we have these three factors from Krogman and then we have the fact that it trades on the New York Stock Exchange and it's a large company. So it just seems odd to say like, well, I don't, you seem shifty to me when you say camera factor five is the important one. Like, it seems like a legal question. Like, is it a dispositive factor or not? Why is it a factual question? Like, I believe you or I don't believe you when you say it's important or, like, I don't know. It seems odd to treat that as a fact question. I think that there's a distinction between the role of camera five in the consideration of the factors on the one hand and the underlying work that the expert did to reach his conclusion and in particular to test the cause and effect factor on camera five. This expert said camera five is important. I wouldn't render an opinion without camera five. And he tried to recant that later. Why? Because he did camera five tests and they were so flawed. They were consistent with market inefficiency, not market efficiency. And they were self-serving and they were designed for litigation and they were inconsistent with texts he relied upon, multiple texts. They were inconsistent with what he did in the past. And because his work was so flawed, she ultimately determined, and because he had testified. But you're saying we can't correct that on appeal? Forget the jurisdictional questions. Like, if we were just here, we had an actual final judgment, and we're back here on cost certification, we couldn't say, well, you know, maybe a circuit court should say which of these factors really matter and camera five isn't dispositive when you have the fact that it's a large company that trades in the New York Stock Exchange, that, you know, there are market makers, that all the things that would make somebody think a market is efficient. But we could say that is a matter of law. First of all, it's not a matter of law. Well, factors have to be a matter of law. Think about these five things have to be a matter of law. That's a legal test. If someone wants to change camera v. Bloom, which is well established and has been accepted in every circuit, I suppose that's a matter of law. If you were to simply change camera v. Bloom and say factor five is no longer one of the factors, I would suggest to you... Or it's not a dispositive factor. Or not dispositive. I would suggest to you most economists, this is not a view that would be shared by economists. Economists' views are the other factors, those indirect structural factors, yes, they're conducive to market efficiency. It's like when a patient goes to the doctor, does he have a pulse? If he has a pulse, that's good. It's an indicator of health. But if he's complaining of heart pain, you've got to do more. And camera factor five is the doing more. Camera factor five is, is this actually in fact an efficient market? Let's look at how the market behaves. That's why when experts like Dr. Feinstein submit a report in order to argue, to opine that a market is efficient, the seven structural indirect factors take a page or two and everything else focuses on, is this actually an efficient market? And that's why when economists actually do this work, they don't discuss the other factors at all. Those are court-created factors to try to better understand the issue. But they're actually looking, is this there at all? And so if this report were to change the law... We can put this aside, but aren't there courts that just say, this is a large company traded on the New York Stock Exchange, we don't need an expert? I don't think I've seen a court go that far, Your Honor. I mean, and any court that did would be a pure outlier. The fact of the matter is courts have said that camera five is the sine qua non of market efficiency. It's the essence of market efficiency. Dr. Feinstein said it was the essence of market efficiency. But there are other courts that have said that while important, it's not required. Am I right about that? There are other courts. I don't think a court has gone so far as to say it's absolutely not necessary. But there are other courts that have said when there is sufficient indicia and an expert has used a standard methodology, we place less weight on camera five. But if you look at their lead case that's cited by the plaintiffs, it's the Wagoner case, and it specifically notes that kind of two areas where camera five evidence matters. One, were there specific circumstances? Circumstances like one of the largest financial crises in the history involving real estate when a real estate-related company is the defendant. That might be a specific circumstance that matters. On the one hand. And on the other hand, and this is what the judge found below, where there is a deeply flawed expert report that's submitted. Because it would be one thing if plaintiffs showed up and said, we have the courage of our convictions. Here are the seven indirect factors. We're not submitting anything on camera five. Court, do what we think you ought to do. That's not what happens ever in these cases. And that is not what happened here. And what happened here is, plaintiffs submitted a deeply flawed expert report that when you truly understand the issues, it's more consistent with market inefficiency than efficiency. So I think I'm over my time. Thank you all. Can I ask you three questions? Yes, Your Honor. Back to jurisdiction. Why did you need 18 months for discovery? That seems excessive to me with one plaintiff, with individual plaintiffs left. So, Your Honor, I heard your question. I was reviewing the record. I thought we had proposed to plaintiffs and not to the court 15 months. And it was the beginning of a negotiation with plaintiffs. We were not engaging in gamesmanship. We did not want to file a motion for summary judgment on solely one issue, loss causation, which had already gone up and come back down on the motion to dismiss. This is a case involving dozens, dozens of witnesses. Fact discovery had not been completed. We hadn't taken the deposition of any defendant. And there are four individual defendants here. We hadn't designated merits experts. They hadn't even designated an expert on loss causation. This expert, Dr. Feinstein, in paragraph 150 of his report, literally said, I am not offering an opinion on loss causation. So there was so much work to do. So you're saying it was a proposal and not, this is what we absolutely have to have. That's right, Your Honor. And in addition, I guess I would add that, you know, it was pretty clear that they weren't pursuing their claims. And so once we proposed that, and then they filed this sua sponte request, it was pretty clear to us that it would have just been a waste of our client's money. Yeah, I saw that in your brief. Can I ask two other questions? If you had moved for summary judgment and they conceded, we would have jurisdiction, right? Yes. Okay, final question. Say you are taking discovery and the plaintiff concedes they have no theory of reliance without price impact. So is that gamesmanship that wouldn't allow us to have jurisdiction? Then you move for summary judgment based on their concessions. Would we still have jurisdiction? I'm not sure I understand the procedural posture. There's a 30 v. 6 witness for the plaintiff who says we have no theory? Yep. I think that, you know, a line would need to be drawn in these cases as to what constitutes an inventive litigation ploy. And I think that the factors that courts would consider is how close in time is it to the 23F denial? You know, is it really, you know, what are the indicia that it is designed to circumvent the 23F denial? And so I think that the facts and circumstances will matter. Did that happen day one? First witness makes some concession that's clearly designed to evade the carefully calibrated 23F framework? That's one setting. That's obviously squarely within Microsoft Corp v. Baker. But on the other hand, is this something that comes out in the 11th deposition after the parties are engaged in the struggle of litigation and it comes out because of cross-examination by defense counsel? I think it's a different story. And so I think that this court, at some point, could be faced with a close question. But, Your Honors, this case isn't one. This is squarely within Baker. Can I ask a follow-up question? Yep, absolutely. So if we were to find no jurisdiction, there was a discussion before about if we don't have jurisdiction, we can't vacate what the district court did in this sua sponte judgment. But is this a distinction that's significant or a distinction without meaning whether we don't vacate it but we explain why we don't have jurisdiction because we don't think it's final? Do you understand what I'm saying? I do understand what you're saying. I mean, I'm not certain how a court could vacate a ruling upon finding it has no jurisdiction. But I think that if you explain it. But we do have to explain why we don't have jurisdiction. Right, but if you explain why you don't have jurisdiction, I would assume that the court below would read it and take that into account in any order if you would thereafter issue. In Microsoft itself, it seems that the Supreme Court reversed and remanded. So if the Supreme Court itself didn't have jurisdiction because there was no final order, but yet they reversed. And then the Ninth Circuit followed suit. So how about that? That's a fair point, Your Honor. It's a fair point. I don't remember the order being vacated in that case. But I think that. Well, it's a voluntary dismissal at the bottom. And so it's reverse and remand, reverse and remand. Right, right. The Tenth Circuit following Microsoft said appeal dismissed. So you've got these. The Ninth Circuit said reverse and remand. Tenth Circuit said appeal dismissed. Right, yeah. I suppose I can see the court engaging in either activity. I mean, I do think it's a little odd that without jurisdiction, the court would then take action to reward plaintiffs for their tactics. Do you agree we could say it was improperly entered in our reasoning? Of course, yes, as it was. Okay. Thank you, Your Honors. Thank you. You really do this for a living? You do these cases all the time? Yes, Your Honor. Wow. Freddie and Fannie provide a lot of litigation. This is taking a little long, sorry. It's all right. I'd like to address a few of the issues that were raised by Mr. Frank and by the court. One is the issue of Article III. Was this a consent to judgment that deprives the court of jurisdiction under Article III? That was a concurring opinion by Justice Thomas that hasn't gained a lot of purchase. But our court before that, in three separate opinions, one by Judge Kethledge, one by Chief Judge Sutton, and one by me, has said, if you seek the result you get in the district court, you've waived your right to contest the merits. If that were an issue under Article III, it would do away with the Raceway exception and as recently reaffirmed in Innovation Ventures. Because in Raceway and Innovation Ventures, the party sought. So then it's the oldest case that controls, right? If that's right. No, I would think that Innovation Ventures got it right, that there should be a mechanism. That's a different answer, right? So my question is, if we have these three cases and then you're saying Innovation Ventures, it's the oldest case that controls. Well, how old would you have to go back to Raceway or Procter & Gamble? Again, I would think that in this situation, there's a mechanism that's been... Hold on. Nashville's 1971, that's the Supreme Court. There's an 1885 Supreme Court case. Nashville might be 1885. Nashville's 1885. So you've got to go pretty far back in Supreme Court jurisprudence to say you can't contest a judgment which you sought. Right, and then there's what's been called the Raceway exception. Raceway itself says generally you can't contest a judgment that you sought except under these circumstances and that's been reaffirmed and we think this falls squarely within that. Before we leave that, am I not right that the general proposition is you can't contest something that you asked for unless... But as I understood the cases, they go on to say parties can preserve their right to challenge the judgment even though they asked for it if they reserve that right unequivocally. That's Innovation Ventures said you can't be a volunteer. And that's what you're contending that you did. And we did. And we did that in the brief clearly. Pages four and six, among others, of our brief for sua sponte. And touching on that... So we would have to hold that innovation technologies got that wrong and there's an earlier opinion that says to the contrary. Yes, you would have to hold that that exception no longer applies in this circuit. And with respect to the issue of sua sponte, I recognize there's a little semantic dissonance there in saying sua sponte, request for sua sponte. The fact of the matter is if you go on Westlaw, you'll see a hundred cases where that is used and the terminology is less important than the fact that district court has the power to grant summary judgment on its own initiative. And as one case said, logic dictates that that power doesn't go away because one party brings it to the court's attention that summary judgment is warranted. I wanted to address a few issues that I believe were factually incorrect that were raised. One is this idea that we weren't going to prosecute our case. What, in fact, we represented was we're not intending to take any further discovery. We'll respond to discovery. But since our case is over, we're not going to essentially expend the additional resources. On a cost-benefit analysis, we thought we had enough to go forward with what we had at that time. Price maintenance, and I believe the court, to address price maintenance, cited In Re Credit Swiss and Best Buy, both of which rejected price maintenance as a theory. I think the court did reject price maintenance as a theory here, which is legally erroneous, not just in application, but she rejected the price maintenance theory because she credited the defense expert who said on the front end, the time misrepresentations and omissions were made, there was no price impact shown by any statistically significant rise or fall of the stock price. Well, under price maintenance theory, it's just confirmatory. It maintains the stock price. And then there's the issue of, well, was there back-end price impact? Mr. Frank suggested that Dr. Bajaj, their expert, did an economic analysis and found that there was no back-end price impact. That's incorrect. Dr. Bajaj's back-end impact analysis was, he looked at some analyst commentary following November 20, 2007, and said, I don't see any connection between the 30% stock drop and your allegations. And legally, that's insufficient. Cases have said that, and we cited some in our brief. No cases said that the analyst commentary review is legally sufficient to rebut back-end price impact. It's not. You have to have proof. And then, going further, while he did suggest... I should probably wrap up. We've gone on. All right. I'll just quickly wrap up. Camera 5, the court clearly said Camera 5 was dispositive. We cited a number of cases. There are dozens and dozens of cases that says it is not. There's one case in the Southern District in New York that was effectively overruled by Wagner that said it is. We think the dozens and dozens of cases are the better view. One last correction. Mr. Frank suggested that Dr. Feinstein's tests on Camera 5 suggested market inefficiency. Any economist worth his salt will tell you that's incorrect. There are tests for market inefficiency like put-call parity and serial correlation. But the fact that you don't prove using your test market efficiency, that's not a showing of market inefficiency. The example is I go fishing and throw my line in a lake. I don't catch a fish. I haven't proven there are no fish in the lake. All right. If I catch a fish, I've proven there's fish in the lake. If I don't catch a fish, it doesn't mean there are no fish in the lake. It turns out my dad was lying to me all those years. There you go. Thank you, Your Honors. Thank you, counsel. Thank you both very much for your thoughtful arguments and briefs. The case will be submitted.